Erin Rose Ronstadt, SBN 028362
Clayton Warren Richards, SBN 029054
OBER PEKAS RONSTADT, PLLC
3030 N. 3rd Street, Suite 1230
Phoenix AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oprdisabilitylaw.com
clayton@oprdisabilitylaw.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Thong Tran,<br><br>    Plaintiff,<br>v.<br><br>Hartford Life and Accident Insurance Company, a plan fiduciary,<br><br>    Defendant. | No.<br><br>**COMPLAINT** |

For his claims against Hartford Life and Accident Insurance Company ("Hartford"), an ERISA plan fiduciary ("Hartford" or "Defendant"), Plaintiff Thong Tran ("Mr. Tran" or "Plaintiff") alleges as follows:

***Jurisdiction, Venue, and Parties***

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. As an employee of Teradata Corporation ("Teradata"), Mr. Tran was a participant and beneficiary of the Teradata Corporation Group Benefits for Active Associates Plan (the "Plan").

3. The Plan is a purported ERISA benefit plan established and maintained by Teradata for the benefit of its employees.

4. Teradata is the Plan Sponsor, Plan Administrator, a plan fiduciary, and Mr. Tran's former employer.

5. Through the Plan's component benefit programs, Teradata offered its active employees various health, life, and disability benefits, including long-term disability ("LTD").

6. Hartford is a third-party claims administrator for the Plan for short-term disability ("STD") and LTD benefits.

7. Hartford is a Plan fiduciary.

8. Hartford has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

9. At the time Mr. Tran sought LTD benefits under the Plan, Hartford administered claims for Teradata under the Plan, acted on behalf of the Plan, and acted as an agent of Teradata and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

10. Under the Plan, Hartford fully insured LTD benefits, meaning it both (a) made claims determinations of an employee's eligibility for benefits under an LTD Policy (the "Policy") issued pursuant to the Plan, and (b) paid those claims.

11. As discussed further below, Hartford's role as both decider of claims and payor of claims creates a structural conflict of interest.

12. Hartford has its principal place of business in the state of Connecticut.

13. Hartford is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

14. Mr. Tran currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

15. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

16. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### Mr. Tran's Disability

17. Mr. Tran suffers from unspecified open-angle glaucoma and generalized contraction of the bilateral visual fields.

18. Mr. Tran suffered for years with slowly worsening vision due to glaucoma.

19. Glaucoma is a degenerative disease. Treatment cannot bring back vision that has been lost as a result of glaucoma.

20. Mr. Tran's glaucoma had required surgical intervention such as trabeculectomies, performed on the right eye in July 2011 and on the left eye in August 2017.

21. On July 22, 2019, Mr. Tran presented to his ophthalmologist for an emergency examination because of a severely swollen and red left eye. Mr. Tran's vision had gone completely blank on the left side.

22. On August 1, 2019, Mr. Tran underwent an emergency surgical procedure of an injection of vancomycin into his left eye.

23. On August 2, 2019, visual field analysis testing revealed extreme and profound vision loss in both eyes.

24. Dr. Lynne Noon issued a Certificate of Legal Blindness on August 2, 2019.

25. Mr. Tran suffers from severe visual loss and is legally blind.

26. Mr. Tran's conditions are disabling and prevent him from performing the essential functions of his Own Occupation and Any Occupation under the Policy.

27. Mr. Tran is under the regular care of a physician.

### Plan Language

28. Under the Policy, "Disability" is defined as "Total Disability."

29. Under the Policy, "Total Disability" is defined as "during the Elimination Period and for the next 12 months, as a result of injury or sickness, You [(the eligible employee)] are unable to perform with reasonable continuity the Essential Duties necessary

to pursue Your Occupation in the usual or customary way" and "[a]fter that, as result of injury or sickness You are unable to engage with reasonable continuity in Any Occupation."

30. Under the Policy, the "Elimination Period" is 180 days.

31. The Policy defines "Essential Duties" as "the substantial and material acts that are normally required for the performance of Your Usual Occupation, which cannot reasonably be omitted or modified."

32. Under the Policy, "Your Occupation or Your Usual Occupation" is defined as "any employment, business, trade or profession and the Essential Duties of the occupation [the individual was] regularly performing for the Employer when the Disability began."

33. Under the Policy, "Your Occupation or Your Usual Occupation is not necessarily limited to the specific job [the individual] performed for the Employer."

34. Under the Policy, "Employer" is defined as "the Policyholder."

35. Under the Policy, "Any Occupation" is defined as "any occupation for which [the individual is] qualified by station in life, physical and mental capacity, education, training or experience, and that has an earnings potential greater than the lesser of: 1) the product of [his] Indexed Pre-disability Earnings and the Benefit Percentage; or 2) the Maximum Monthly Benefit."

36. Under the Policy, "Index Pre-disability Earnings" are defined as "[the individual's] Pre-disability Earnings adjusted annually by adding the lesser of: 1) 10%; or 2) the percentage change in the Consumer Price Index (CPI-W)."

37. Under the Policy, "Monthly Benefit" is defined as "a monthly sum payable to [him] while [he is] disabled, subject to the terms of The Policy."

38. The Plan handbook, presumably disbursed by Teradata to Plan participants, contains different definitions of "Disability."

39. The Plan handbook defines Disabled as "[d]ue to sickness, pregnancy or accidental injury, [the individual is] receiving appropriate care and treatment from a physician on a continuing basis, and during the first 26 weeks of [his] disability and the next

-4-

12-month period, [he is] unable to earn more than 80% of [his] pre-disability earnings or indexed pre-disability earnings at [his] own occupation for any employer in [his] local economy."

40. The Plan handbook defines the term "Own Occupation" as "the essential functions [the individual] regularly perform[s] that provide [his] primary source of earned income."

41. The Plan handbook defines "Disability," for those Eligible for Coverage beyond 12 months, as "[d]ue to sickness, pregnancy or accidental injury, [the individual is] receiving appropriate care and treatment from a physician on a continuing basis, and after the first 12 months of long-term disability, [he] is unable to earn more than 60% of [his] pre-disability earnings or indexed pre-disability earnings at any gainful occupation for which [he is] reasonably qualified taking into account [his] training, education, and experience for any employer in [his] local economy."

42. Under the Plan, after submission of an LTD claim, "Hartford will review [the individual's] claim and notify [him] of its decision to approve or deny [his] claim" and "[s]uch notification will be provided to [him] within a reasonable period, not to exceed 45 days from the date [he] submitted [his] claim."

43. Under the Plan, "Hartford may have up to two additional extensions of 30 days each to provide such notification" but '[i]f The Hartford needs an extension, it will notify [him] prior to the expiration of the initial 45-day period."

44. With respect to the differing definitions of Disability, the Plan handbook provides, "If a provision described in this handbook differs from the provision of the applicable plan document, the plan document prevails."

45. Mr. Tran has, at all times since the date his Disability began, been eligible for the LTD benefit under either definition due to his inability to perform the duties of his own occupation or any other occupation as documented by his treatment providers and as borne out in the medical record.

**Mr. Tran's Employment**

46. Mr. Tran began working for Teradata on July 9, 1984.

47. As of his last day of work, July 18, 2019, Mr. Tran held the position of Senior Technical Consultant, which requires the capability to physically perform "sedentary" work duties.

48. The U.S. Department of Labor defines Sedentary Work as having the ability to exert up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body.

49. Hartford failed to obtain a copy of Mr. Tran's Job Description prior to denying his STD benefits, and Teradata did not disclose one despite Mr. Tran's October 21, 2019 request for this information.

50. Defendant has still failed to provide Mr. Tran's job description.

51. At any rate, Mr. Tran's legal blindness prohibits him from performing the duties of any job.

**The STD Claim History**

52. Mr. Tran filed a claim for STD benefits with Hartford on August 20, 2019.

53. In response, Hartford sent medical records requests and a disability form to Mr. Tran's physicians.

54. On August 26, 2019, Hartford followed up on their requests.

55. Hartford's internal notes show that on September 3, 2019, Hartford had denied Mr. Tran's claim, stating "[a]t this time we don't have medical info . . . [d]ue to lack of info will have to deny the claim."

56. Hartford never communicated with Mr. Tran before making this determination.

57. On September 11, 2019, Mr. Tran contacted Hartford by email to inquire why his claim had been denied. Mr. Tran also sent email inquiries again on September 12, 2019 and September 16, 2019.

58. Despite prematurely denying Mr. Tran's claim on September 3, 2019, Hartford sent a second request for medical records to Mr. Tran's physician on September 16, 2019.

59. On September 23, 2019, Mr. Tran's physician faxed Mr. Tran's medical records and multiple disability forms to Hartford.

60. Hartford received medical evidence supporting Mr. Tran's legal blindness and his inability to work, including Dr. Noon's August 2, 2019 Certificate of Legal Blindness and an August 21, 2019 "Report of Illness or Physical Disability" form completed by Mr. Tran's ophthalmologist, Dr. Camille M. Hylton ("Dr. Hylton"), which stated he "has extremely limited vision due to advanced glaucoma," was "unable to work as of 7/22/19," and could not "[c]hange occupations."

61. Hartford also received a September 23, 2019 Attending Physician's Statement completed by Dr. Hylton that stated that Mr. Tran "has extremely limited vision due to advanced glaucoma" and that "no improvement expected."

62. Hartford issued the written STD Denial letter on September 24, 2019.

63. On September 24, 2019, Hartford finally sent a substantive email response to Mr. Tran's three email inquiries, informing him that the denial letter had been sent.

64. Hartford never reviewed Mr. Tran's medical records before issuing the Denial.

65. Hartford did not have a medical consultant evaluate Mr. Tran's claim before issuing the Denial.

66. Mr. Tran's counsel timely appealed the STD Denial in a letter dated March 23, 2020.

67. As part of the STD Appeal, Mr. Tran's counsel submitted compelling new evidence, including Mr. Tran's Social Security Disability Insurance ("SSDI") file.

68. On October 17, 2019, the Social Security Administration ("SSA") determined that Mr. Tran was "Disabled."

-7-

69. The SSA's determination was based on a review of the medical records and an independent medical file review, as well as Dr. Noon's August 2, 2019 Certificate of Legal Blindness.

70. The SSA determined that Mr. Tran's medically determinable impairments resulted in limitations that were "substantiated by the objective medical evidence alone."

71. The SSA issued a letter stating that Mr. Tran was entitled to monthly disability benefits beginning in February 2020.

72. On April 1, 2020, Hartford issued a letter overturning the original decision to deny Mr. Tran's STD claim.

73. On April 13, 2020, Hartford issued a letter approving Mr. Tran's STD claim from July 22, 2019 through January 19, 2020, the maximum benefit period.

74. On April 14, 2020, Hartford issued a letter adjusting Mr. Tran's STD claim end date to August 1, 2019 because he was no longer employed by Teradata as of August 2, 2019.

**The LTD Claim History**

75. On January 15, 2020, Mr. Tran's counsel opened an LTD claim telephonically with Hartford under Claim No 25271398.

76. At the same time, Mr. Tran's counsel submitted his March 23, 2020 STD Appeal, they also submitted a supplemental proof of loss for the LTD benefits (the "LTD Claim") to Hartford, which would have begun on January 25, 2020.

77. In the supplemental proof of loss for LTD benefits, Mr. Tran's counsel informed Hartford it was in violation of ERISA pursuant to 29 CFR §2560.503-1(f)(3), as Hartford had failed to issue their "determination within a reasonable period of time, but not later than 45 days after the receipt of claim by the plan." Mr. Tran's counsel requested Hartford provide an explanation for failing to adjust the LTD claim within ten (10) days.

78. After receiving no response form Hartford, Mr. Tran's counsel submitted a letter on April 15, 2020 requesting an update regarding Mr. Tran's LTD claim. Mr. Tran's

counsel asked for an update within ten (10) days and for a determination to be made on the LTD claim without further delay as his STD claim benefits had been awarded.

79. To date, Mr. Tran's counsel has not received any written acknowledgment regarding the LTD claim from Hartford since opening the claim on January 15, 2020.

80. Hartford did not identify special circumstances for requesting additional time to review proof of loss. In fact, Hartford has failed to communicate at all with Mr. Tran.

81. To date, Hartford has failed to make a determination on Mr. Tran's LTD Claim in violation of the Plan and 29 CFR § 2560.503-1(f)(3).

82. Mr. Tran is entitled to de novo review of his claim due to Hartford's abdication of ERISA.

83. Pursuant to the 29 CFR § 2560.503-1(l)(2)(i), "In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of this section. Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section 502(a) of the Act under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary."

84. Mr. Tran exhausted his administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendant Hartford)**

85. All other paragraphs are incorporated by reference.

86. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

87. The Plan represents LTD coverage and a promise to provide LTD benefits until Mr. Tran is no longer Disabled under the terms of the Plan.

88. Mr. Tran is entitled to LTD benefits.

89. Under the Plan, Mr. Tran is eligible to receive LTD benefits until he reaches age 66 years and 4 months old.

90. Mr. Tran became disabled in July 22, 2019 and continues to be disabled for his Own Occupation and Any Occupation under the terms of the Plan.

91. Mr. Tran tried to claim the LTD benefits under the Plan to which he is entitled, but Hartford failed to consider or render a timely decision on his LTD claim.

92. Hartford was unduly influenced by its financial conflict of interest when ignoring Mr. Tran's claim for LTD benefits.

93. Due to Hartford's failure to render a determination, it did not advise Mr. Tran of his rights under ERISA.

94. Under 29 C.F.R. § 2560.503-1(l)(2)(1), Mr. Tran is deemed to have exhausted his administrative remedies and he is entitled to pursue any available remedy under ERISA.

95. Hartford's ignoring of Mr. Tran's LTD Claim entitles him to *de novo* review.

96. Because Hartford failed to exercise any discretion by failing to make a decision on Mr. Tran's LTD claim, he is deemed to have exhausted his administrative remedies and review of his claim is *de novo. See* 29 C.F.R. § 2560.503-1(l); *see also Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1107 (9th Cir. 2003) ("[T]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion.") (quoting *Gilbertson,* 328 F.3d at 633) ; *id.* ("[T]here is an undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner.") (quoting *University Hosps.,* 202 F.3d at 846 n.3).

97. Mr. Tran's claim for LTD benefits against Hartford are timely under the Plan provisions and applicable law.

98. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Tran is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

99. Mr. Tran is entitled is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce his rights under the Plan.

100. Mr. Tran is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

101. Pursuant to 29 U.S.C. § 1132(g), Mr. Tran is entitled to recover his attorneys' fees and costs incurred herein.

102. Mr. Tran is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(Defendant Hartford)**

103. All other paragraphs are incorporated by reference.

104. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

105. Hartford is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Tran.

106. Hartford exercises discretionary authority or control over management and administration of the Plan with respect to LTD benefits.

107. Under 29 U.S.C. § 1104(a), Hartford is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man or woman acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

108. Under ERISA, which is founded in trust principles, Hartford is required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

109. Hartford breached its fiduciary duties to Mr. Tran under 29 U.S.C. § 1132(a)(3).

110. Hartford ignored Mr. Tran's LTD claim, which constitutes a breach of fiduciary duty.

111. ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Tran by Hartford's failure to acknowledge Mr. Tran's duly filed LTD claim. Mr. Tran seeks redress under 29 U.S.C. § 1132(a)(3) for the delay in the payment of benefits due and owing to him.

112. To the extent that Hartford's ignoring Mr. Tran's LTD claim caused Mr. Tran harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

113. Hartford's failure to act prudently and in the best interests of Mr. Tran is a breach of fiduciary duty requiring appropriate equitable relief following discovery of Hartford's conduct as it relates to Mr. Tran's claim.

114. Hartford was unjustly enriched as a result of its breach of fiduciary duty because it wrongfully withheld benefits for its own profit.

115. Hartford should be held liable for benefits it gained through unjust enrichment and for harm caused as a result of its breach to Mr. Tran. The undue delay is not contingent upon Hartford's denial of benefits and is a separate injury unto itself.

116. Based on the facts of this case, Mr. Tran has "other equitable relief" available to him in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mr. Tran whole for his losses from Hartford's breaching conduct.

117. The Court has broad discretion to fashion appropriate relief to make Mr. Tran whole and should mold the relief necessary to protect the rights of the participants.

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

-12-

118. Mr. Tran is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

119. He is entitled to enjoin any act or practice by Hartford that violates ERISA or the Plan, or to seek other appropriate relief that is traditionally available in equity.

120. A plaintiff may "enjoin future improper claims handling activities that may lead to wrongful denials in order to prevent future delays in payments." *Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan,* No. CV-15-01547-PHX-DLR, 2016 U.S. Dist. LEXIS 2927 at *11-12; *Brady v. United of Omaha Life Ins.*, Co., 902 F. Supp. 2d 1274, 1281 (N.D. Cal. 2012). Any injunctive relief must be intended for his "sole benefit" to bar certain conduct "in the event the parties have future interactions related to Plaintiff's LTD benefits after the lawsuit is resolved." *McGlasson v. Long Term Disability Coverage*, 161 F. Supp. 3d 836, 840 (D. Ariz. 2016).

121. Injunctive relief broadly worded requiring a defendant to "obey the law in the future" is prohibited, **but injunctive relief "describ[ing] in reasonable detail . . . the acts restrained or required" is entirely proper.** *Brady* at 1284 (citations omitted) (emphasis added); *see also* Fed. R. Civ. P. 65(d)(1)(C).

122. Hartford's imprudent conduct demands injunctive relief as permitted under ERISA, because the relief under (a)(1)(B) is inadequate to prevent future harm to Mr. Tran.

123. In particular, the Court can enjoin a plan administrator from using a conflicted fiduciary to administer both STD and LTD claims, unless the plan administrator imposes sufficient procedural safeguards to ensure the conflict does not affect the process.

124. The Court can order Hartford to administer Mr. Tran's LTD claim according to the Plan terms and prohibit Hartford from engrafting additional terms.

125. The Court can order Hartford to make a decision on Mr. Tran's claim and engage in a meaningful dialogue with Mr. Tran in the future.

126. The Court can enjoin Hartford from imposing unreasonable time limits to respond to demands for production of necessary evidence and enjoin Hartford from making a claim or appeal decision prior to the expiration of the reasonable time limit.

127.	ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Tran by Hartford's breach of fiduciary duty violations.

128.	As a direct and proximate result of the breaches of fiduciary duty, Mr. Tran suffered actual, *significant* financial harm and has incurred financial expense.

129.	Mr. Tran is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

130.	Pursuant to 29 U.S.C. § 1132(g), Mr. Tran is entitled to recover his attorneys' fees and costs incurred herein.

**WHEREFORE**, on all claims, Mr. Tran prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.	All past LTD benefits under the terms of the Plan;

B.	Clarifying and determining Mr. Tran's rights to future benefits under the terms of the Plan;

C.	For any other benefits Mr. Tran may be entitled to receive under the Plan due to her disability;

D.	All other equitable relief that is proper as a result of Hartford's breaches of fiduciary duties;

E.	An award of Mr. Tran's attorneys' fees and costs incurred herein;

F.	An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.	For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 22nd day of May, 2020.

OBER PEKAS RONSTADT, PLLC

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Clayton W. Richards
Attorneys for Plaintiff